Ejectment. — It was stated by the counsel that both these causes depended on the same title papers and evidence; and, with the consent of the Court. it was agreed that a jury be impanelled to try both cases.
The plaintiff claimed under a grant to Robert Kerr, with which he connected his title.
The defendants deraigned their title as follows. Judgment was obtained against the plaintiff's father in Hamilton's district. The land in contest was sold by execution under that judgment, and the defendants claimed under the sale by the sheriff. *Page 41 
A question arose whether the deed was certified in such a manner as to entitle it to be read. It was certified by the clerk thus: A. B., C. G. C, putting the initials for Clerk of Green county; and by the register thus: C. D. — C. R.; putting the initials for county register.
The objection that these initials are not sufficiently descriptive of the character by whom the acts were done, is surely as fine-spun technical an objection as ever was countenanced in a court of justice. I am aware that a case was once determined in the district of Mero, which bears some resemblance to the present; but there was much greater reason to support that case than this. In that, the certificate of the clerk of Davidson county was in this form: "A copy, test Andrew Ewing," without stating his official capacity at all. In that case, the Court determined that the paper could not be read unless the clerk had signed his name officially. I cannot say that the opinion was satisfactory. So strict was the rule considered to be that the courts never would extend it any further. There certainly ought to be a difference between the exemplification of records of our own State and foreign governments. The courts are presumed to know their own laws, and officers appointed under those laws; but not those of other governments. If a copy, from its caption and the body of the writing purports to be a copy of a record, though the clerk or other officer certifying does not sign his name officially, I cannot see the propriety of saying that we will not receive the paper as evidence on account of the omission. It is certain that no persons but those who are by law intrusted with the keeping of records are authorized to certify copies or originals. Suppose the official capacity to be stated, what species of evidence does this furnish? Presumptive only. And as all presumptions of fact stand until the contrary be proven, the evidence is received in ordinary cases. It never can be contended that the certificate of an individual that he is an officer makes *Page 42 
him so; and though there be such a certificate, would the Court be precluded from inquiring whether the individual really possessed such a character as he had attributed to himself. If this were the case, any individual of a county, by having access to the office, might send us a copy, signing his name officially; and we should be bound to receive it, though each member of this court might probably know that another person was clerk. The evidence of a certificate of a record is for the determination of the court, as to its reception, and not the jury. In many cases the Court is not only bound to determine as to its reception, but its effect. This happens in all cases where there is no jury. In a case like this, would the Court be bound to receive, as conclusive, the certificate of official character? It appears to me that it would not. Under all these considerations it would seem that the most rational rule is, with respect to the records of the State, that, if from the caption and body of the writing it appears to be a copy of a record, or clearly intended as a certificate of an official act, and there is no reason to believe the person giving the certificate does not possess the character that would enable him to give it, it will receive it in evidence. The case before the Court, however, is stronger, as the initials in proceedings of a civil and not a criminal nature are sufficiently descriptive. This opinion is not intended to apply to criminal proceedings, which perhaps rest on different principles.
CAMPBELL, J., doubted and recommended to the parties to admit the paper to be read by consent, which accordingly was done.
The defendants proceeded with their evidence. They showed that the lessors of the plaintiff were sons of James Stinson, against whom the judgment was obtained; that Samuel Vance owned the land; that he conveyed to James Stinson, the father, but the deed had not been registered; that when James Stinson became involved in his circumstances he destroyed the deed, and afterwards Vance conveyed the land to his sons, then infants.
CAMPBELL and KENNEDY, for the plaintiff took *Page 43 
several exceptions to the record of the judgment, execution, c. Afi. fa. was first issued upon which the sheriff returned that he had levied the same on a tract of land. A venditioni exponas then issued upon which the sheriff returned that he had levied the same on a house and lot, and tract of land. A second venditioni exponas
issued, upon which the sheriff returned satisfied and ready to render.
It was objected that the sale of this land was made without authority; the first venditioni exponas did not give power to seize property at all. As the writ imports, it only authorized the sale of the property, which had been levied on under the fi. fa. The sale and deed are void on this ground. The return of the sheriff does not state the sale of this land, which is necessary, so that the record may show the person to whom the sheriff was authorized to convey; and the sheriff's deed is void on this ground.
WHITE, for the defendants. — In this case, we have shown a judgment against the father; execution and return of the sheriff, and sheriff's deed reciting that he had sold this land under that execution. Purchasers have nothing to do with any irregularity in issuing process, nor are they to be even affected by an erroneous judgment. If sales were liable to be overhauled in the manner contended for by the plaintiff's counsel, no person could be found to purchase, which would be highly derogatory to the interest of both debtor and creditor, and to the policy of the law.
The case of Waller's Lessee v. Alexander and Whiteside, in the Federal Court, determines this. In that there were a judgment and sheriff's deed only. No execution nor return of the sheriff was shown; and yet the Court determined that the sheriff's title, which recited the judgment and execution, was good. He did not insist that a new levy could be made on a venditioni exponas. This tract of land was levied on by the first execution, the fi. fa. We lay out of view the first venditioni exponas. The second refers to thefi. fa. It was not regular to be sure, but with this we, as *Page 44 
purchasers, have nothing to do. All that can be insisted for us to show is a judgment and execution; this we have done. And whether there was error in the judgment, or irregularity in the process, cannot affect a purchase.
SCOTT, for the plaintiff. — Purchasers at sheriff's sale must abide by the maxim of caveat emptor. If there was such irregularity in the sale, it should avoid the deed made by the sheriff. Purchasers at sheriff's sale stand in no better situation than other persons; and in other transactions in life it is incumbent on them to see that the proceedings are regular. In Waller's case, it appeared that the execution was lost. It is admitted that was correct; and such proof may be by parol when better cannot be had. WHITE referred to 2 Bac. Ab. tit. Execution.